IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

TABARUS ANTHONY JOHNSON,

      Plaintiff,

vs.                                  Case No: 1:13-cv-87-SPM-GRJ

BRIAN BATES, et al.,

      Defendants.

_____/

## REPORT AND RECOMMENDATION

      Plaintiff was an inmate in the custody of the Florida Department of Corrections ("FDOC") when he initiated this civil rights action in state court.[1]  (Docs. 1, 4.)  The suit was removed to this Court by Defendants, who have filed a motion to dismiss.  (Doc. 9.) Plaintiff filed a response.  (Doc. 11.)  An additional defendant, Martain, was subsequently served and has adopted the motion to dismiss (Doc. 9) filed by defendants Merriman, Lukens, Landrum, Dickerson, Bates, Leavings, and Patten. (Docs. 24, 27.)[2]  Plaintiff filed a response to Defendant Martain's adoption of the motion to dismiss (Doc. 28), and therefore this matter is ripe for review.  For the reasons discussed below, it is recommended that the motion to dismiss be granted in part and denied in part.

## I.  PLAINTIFF'S ALLEGATIONS

      Plaintiff's complaint alleges a variety of wrongs that occurred between December

_____

[1] Plaintiff was released from FDOC custody on September 5, 2012.  (Doc. 9.)

[2] A Report and Recommendation (Doc. 25) is currently pending recommending dismissal of Defendants Grand, Johnson, Florida Department of Corrections, and Suwanee C.I. Annex.

2011 and March 2012, at Suwannee C.I. Annex.  (Doc. 4, Attachment 1, pp. 4-7.)  On

December 9, 2011,Plaintiff was placed in a cell in confinement shortly after noon and

asked Defendant Merriman if he was going to eat.  Defendant Merriman stated "as long

as he's the dorm officer [Plaintiff] will never eat."  (*Id.* at p. 5.)  Defendants Dickerson,

Patten, and Martain then came to Plaintiff's cell to assist Defendant Merriman.  Plaintiff

asked Defendant Martain for a food tray because he had not eaten, and Defendant

Martain stated "that's up to Sgt. Dickerson whether or not if you eat."  (*Id.*)  Defendant

Dickerson then said "as long as [I] am dorm supervisor that's how it's going to be."

Defendants Patten, Merriman, Dickerson, and Martian then told Plaintiff to turn around

and cuff up because he would not stop asking about a food tray.  Plaintiff was then

taken to the shower, stripped, and punched in the kidney several times by Defendants

Merriman and Patten, while Defendants Martain and Dickerson stood by.

Plaintiff did not eat lunch or dinner that day, was placed on property restriction,

and was served a disciplinary report for destruction of state property for ripping a pillow

case.  Later that day, Plaintiff tried to talk to Captain Johnson about the situation but he

told Plaintiff that he would only to talk to him if he had to gas him.  The following day,

December 10, 2011, Plaintiff was again denied two meals and told by Officer Grim

(Grand) that he was not to be fed per the Captain.  Plaintiff filed an informal grievance

on December 13, 2011.  The December 28, 2011 response stated that "at no time were

these statements ever said to me, per procedure you were offered trays on the stated

dates, it is the inmate's responsibility to accept the tray."

On January 4, 2012, there were no sheets in Plaintiff's cell during Defendant

Merriman's shift.  (*Id.* at p. 6.)  On January 13, 2012, Plaintiff declared a psychological

emergency and was maced in response. He made several attempts to contact the warden, the inspector, and anyone who was willing to listen. He filed an emergency grievance on January 9, 2012, and it was approved on February 2, 2012. After a brief transfer to Santa Rosa C.I. on January 23, 2012, Plaintiff returned to Suwannee C.I. Annex on February 2, 2012. On March 21, 2012, Plaintiff was maced and a false disciplinary report was written by Defendants Bates and Dickerson stating that Plaintiff was being disruptive on March 22, 2012. Plaintiff was also served a DR for creating a disturbance on in the Quad. After a disciplinary hearing on March 29, 2012, Plaintiff was sentenced to 30 days of confinement and 30 days of lost gain time.

For relief Plaintiff seeks declaratory relief, injunctive relief, $250,000 in compensatory damages, and $250,000 in punitive damages. (*Id.* at p. 7.)

## II. STANDARD OF REVIEW

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that an act or omission committed by a person acting under color of state law deprived him of a right, privilege, or immunity secured by the Constitution or laws of the United States. *Hale v. Tallapoosa County*, 50 F.3d 1579, 1582 (11th Cir.1995). If a litigant cannot satisfy these requirements, or fails to provide factual allegations in support of the claims, then the complaint is subject to dismissal. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (noting that "[f]actual allegations must be enough to raise a right to relief above the speculative level," and complaint "must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action"); *Ashcroft v. Iqbal*, 556 U.S. 662, 680-84 (2009) (*Twombly* "expounded the pleading standard for all civil actions," and conclusory allegations that

"amount to nothing more than a formulaic recitation of the elements of a constitutional . . . claim" are "not entitled to be assumed true," and, to escape dismissal, complaint must allege facts sufficient to move claims "across the line from conceivable to plausible.").

## III.  DISCUSSION

## A.  Failure to Exhaust

Plaintiff has failed to exhaust all of the claims set forth in his complaint.  The Prison Litigation Reform Act, 42, U.S.C. § 1997e(a), requires a prisoner to exhaust all available administrative remedies before filing an action challenging prison conditions. "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock,* 549 U.S. 199, 211 (2002).  Further, the PLRA's exhaustion requirement contains a procedural default component; prisoners must comply with the applicable deadlines, or good-cause standards for failure to comply, contained in the administrative grievance procedures. *Johnson v. Meadows*, 418 F.3d 1152, 1158 (11th Cir. 2005).  "'[A] prisoner who does not properly take each step within the administrative process has failed to exhaust state remedies, and thus is foreclosed by § 1997e(a) from litigating. . . . [T]o exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require.'" *Id*. (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024-25 (7th Cir. 2002)).

The Florida Administrative Code provides an administrative remedy process for inmates of facilities within the Florida Department of Corrections.  With certain exceptions, inmates initiate the process by submitting an informal grievance.  If the

inmate is dissatisfied with the response to the informal grievance, he can submit a formal grievance at the institutional level within 15 days of the response to the informal grievance. If the inmate is dissatisfied with the response to the formal grievance, he can file an appeal with the Office of the Secretary within 15 days of the response to the formal grievance.[3]

In the Eleventh Circuit, the defense of failure to exhaust under the PLRA is considered a matter in abatement under Fed. R. Civ. P. 12 and, thus, is treated like a defense of lack of jurisdiction. *Bryant v. Rich,* 530 F.3d 1368, 1374, 1376 (11th Cir. 2008). Deciding a motion to dismiss for failure to exhaust administrative remedies requires a two-step process as established in *Turner v. Burnside,* 541 F.3d 1077, 1082 (11th Cir. 2008). The Court first "looks to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes plaintiff's version of the facts as true. If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed." *Id.* at 1082. If the complaint is not subject to dismissal through the first step, the Court "proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion." *Id.*

Plaintiff filed two direct grievances (log nos. 12-6-03425 and 12-6-08920). In log no. 12-6-03425, Plaintiff alleged, in relevant part, that he was not fed December 9-11, 2011; that he was placed on property restriction on January 3, 2012. (Doc. 9, Exh. C.) In log no. 12-6-08920, Plaintiff states he was assaulted at Suwannee and was not fed December 9-11, 2011. Although Plaintiff makes generalized allegations of an "assault"

---

[3] *See* Fla. Admin. Code § 33-103.005-008, § 33-103.011(c).

on December 9, 2011, he offers no details regarding who assaulted him (i.e., whether it was another inmate or an officer; the names of the assailants) and merely urges the Secretary to review an unspecified video. (Doc. 9, Exh. D.) FDOC records do not show that any of Plaintiff's formal or informal grievances were approved. (Doc. 9, Exh. B.) In his response to the motion to dismiss, Plaintiff argues that his direct grievances and verbal statements to various defendants and prison officials were sufficient to exhaust his administrative remedies. (Doc. 11.)

In this case, Defendants' motion and attached documents set forth uncontroverted facts showing that Plaintiff failed to exhaust his administrative remedies as to his claims that: (1) Defendants Merriman and Patten punched him several times while Defendants Martain and Dickerson stood by; (2) he was issued a false disciplinary report for destruction of a pillow; and (3) that an unnamed person used mace on Plaintiff when he declared a psychological emergency January 13, 2012. (Doc. 9, Exhs. B, C.) The aforementioned claims against Defendants Merriman, Patten, Martain, and Dickerson are due to be dismissed for failure to exhaust administrative remedies. *See Turner*, 541 F.3d 1082.

## B. Failure to State a Claim

### 1. *Heck v. Humphrey*

Plaintiff alleges that on March 21, 2012, Plaintiff was maced and a false disciplinary report was written by Defendants Bates and Dickerson stating that Plaintiff was being disruptive on March 22, 2012. (Doc. 4, Attachment 1, pp. 4-7.) Plaintiff has failed to state a claim against either Defendant Bates or Dickerson. The March 2012 disciplinary report resulted in the loss of gain time for Plaintiff. (*Id.* at 6.) In *Heck v.*

*Humphrey*, 512 U.S. 477 (1994), the Supreme Court held that:

> [I]n order to recover damages for allegedly unconstitutional conviction or
> imprisonment, or for other harm caused by actions whose unlawfulness
> would render a conviction or sentence invalid, a § 1983 plaintiff must
> prove that the conviction or sentence has been reversed on direct appeal,
> expunged by executive order, declared invalid by a state tribunal
> authorized to make such determination, or called into question by a
> federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A
> claim for damages bearing that relationship to a conviction or sentence
> that has not been so invalidated is not cognizable under § 1983. Thus,
> when a state prisoner seeks damages in a § 1983 suit, the district court
> must consider whether a judgment in favor of the plaintiff would
> necessarily imply the invalidity of his conviction or sentence; if it would,
> the complaint must be dismissed unless the plaintiff can demonstrate that
> the conviction or sentence has already been invalidated.

512 U.S. at 486–87 (footnote omitted).

The Supreme Court has applied *Heck* to prisoners' claims challenging prison
disciplinary actions, even when the prisoner does not explicitly seek reinstatement of
lost good-time credits. *See Edwards v. Balisok*, 520 U.S. 641, 646 (1997) (holding that
*Heck* bars a prisoner's complaint that "would, if established, imply the invalidity of the
deprivation of his good-time credits"). *Heck* is not categorically applicable to all suits
challenging prison disciplinary actions. *Muhammad v. Close*, 540 U.S. 749, 754
(2004). But if good-time credits have been eliminated, a prisoner's § 1983 suit
challenging a disciplinary action may be construed as seeking a judgment at odds with
his conviction or with the state's calculation of time that he must serve for the underlying
sentence. *See id.* at 754–55 (stating that where the magistrate judge expressly found or
assumed that no good-time credits were eliminated by the challenged prison action, the
prisoner's § 1983 suit could not be construed as seeking a judgment at odds with his
conviction or sentence).

In this case, Plaintiff's claim against Defendants Bates and Dickerson clearly stray into *Heck* waters, because Plaintiff's contention that the disciplinary report was false necessarily implies the invalidity of the disciplinary conviction.   Absent expungement or invalidation of that disciplinary action, Plaintiff's claim is barred by *Heck.*   In addition, federal courts do not operate as appellate courts for prison disciplinary actions.  As the Eleventh Circuit has explained, "a prisoner cannot maintain a retaliation claim when he is convicted of the actual behavioral violation underlying the alleged retaliatory false disciplinary report and there is evidence to sustain the conviction."  *O'Bryant v. Finch*  637 F.3d 1207, 1215 (11th Cir. 2011); *Henderson v. Baird*, 29 F.3d 464, 469 (8th Cir.1994) (noting inmate alleged officer was lying but concluding that the finding of an actual violation of prison rules was based on some evidence of the violation and "essentially checkmates [the prisoner's] retaliation claim").

Accordingly, Plaintiff's claims that Defendants Bates and Dickerson wrote him a false disciplinary report are due to be dismissed.

## 2.  Denial of food

In his complaint, Plaintiff alleges that while in disciplinary confinement, he was denied lunch and dinner on December 9, 2011; denied "all two meals" on December 10, 2011; and told by Officer Grim (Grand) not to be fed on December 11, 2011.  (Doc. 4, Attachment 1, p. 6.)   In both of his direct grievances to the Secretary, Plaintiff stated that he was "not fed" December 9, 10, and 11.  (Doc. 9, Exhs. C, D.)  In arguing that Plaintiff has failed to state a constitutional claim for denial of food, Defendants characterize the deprivation as being denied two of three meals (lunch and dinner) over the course of two days.  (Doc. 9, pp. 20-21.) While this could technically be inferred

from Plaintiff's complaint, it is problematic because it assumes, with no evidence in the record to support such an assumption, that Plaintiff was served breakfast on each of these days, and is contrary to Plaintiff's assertion that he was denied "all 2 meals" on December 10, 2011. Because the analysis of whether Plaintiff has stated a claim for denial of meals may well turn on whether that breakfast meal was served, the Court will assume, for the purposes of the motion to dismiss, that Plaintiff alleges he was deprived of all meals from noon on December 9, 2011 through December 10 and 11. The specific Defendants Plaintiff implicates in denying him food are Officer Merriman, Sgt. Dickerson, and Captain Johnson.[4]

"The deprivation of food constitutes cruel and unusual punishment only if it denies a prisoner the 'minimal civilized measure of life's necessities.'" *Bryant v. Downs*, 2010 WL 2593564, at *4 (M.D. Fla. 2010) (quoting *Wilson v. Seiter,* 501 U.S. 294, 303 (1991). Courts consider the amount and duration of deprivation in determining whether denial of food arose to the level of a constitutional violation. *See id.* (finding Plaintiff's claim that transport drivers may have tampered with three meals did not a state a claim for Eighth Amendment relief)*; Foster v. Runnels,* 554 F.3d 807 (9th Cir. 2009) (reversing dismissal of Eighth Amendment claims where plaintiff was denied 16 meals over 23 days); *Hutch v. Department of Corrections,* 993 F. 2d 882 (9th Cir. 1993) (affirming dismissal of claim where plaintiff alleged he was denied breakfast twice and not given the correct religious meal on another occasion); *Talib v. Gilley*, 138 F.3d 211, 214 n. 3 (5th Cir. 1998) (nothing that there was no constitutional violation where one out of every

---

[4] As noted above, the undersigned has recommended the dismissal of Defendant Johnson from the suit due to Plaintiff's failure to timely serve Captain Johnson. (Doc. 25.) That Report and Recommendation is currently pending.

nine meals was denied); *Cooper v. Sheriff of Lubbock County,* 929 F. 2d 1078 (5th Cir. 1991) (twelve days of deprivation was unconstitutional). *See also Barclay v. New York*, 477 F. Supp. 2d 546 (N.D. N.Y. 2007) (finding no constitutional violation where plaintiff was deprived of food for 2-3 days because inmate did not provide evidence of malicious intent or harm).

Defendants may be correct that, if Plaintiff's allegations were only that he was denied two of three meals over the course of two days, he would fail to state a claim for an Eighth Amendment violation. However, a fair reading of Plaintiff's complaint is that he was denied all meals from approximately noon on December 9, 2011 through December 10 and 11. Three days of denial of food (i.e., 13 consecutive meals) for punitive purposes may, at least for the purposes of this motion to dismiss, state a claim for cruel and unusual punishment. Accordingly, Defendants Merriman and Dickerson's motion to dismiss is to due to be denied as to this claim.

### 3. Denial of sheets

In his complaint, Plaintiff alleges that on January 4, 2012, between 8 a.m. and 4 p.m., there were no sheets in Plaintiff's cell during Defendant Merriman's shift. (*Id.* at p. 6.) An isolated incident of being deprived of sheets, from 8 a.m. to 4 p.m., clearly does not rise to the level of a constitutional violation. However, to the extent Plaintiff alleges that the deprivation of his property gives rise to a § 1983 claim, his argument is without merit.

"It is well established that negligent or intentional deprivations of property resulting from random, unauthorized acts of government officials do not become due process violations when there exist adequate remedies under state law for Plaintiff to

seek redress for the deprivation." *Edler v. Gielow,* 2010 WL 3958014, at *3 (N.D. Fla. 2010) (citing *Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *Parratt v. Taylor*, 451 U.S. 527, 543-44 (1984), *overruled on other grounds*, *Daniels v. Williams,* 474 U.S. 327 (1986); *Rodriguez-Mora v. Baker*, 792 F. 2d 1524, 1527 (11th Cir. 1986). Remedies exist in FDOC inmate grievance procedures and Florida's state law tort remedy (Fla. Stat. § 768.28). Accordingly, Plaintiff cannot maintain a § 1983 claim based on the alleged deprivation of his sheets.

### 4. Supervisory liability

Plaintiff does not make direct allegations of wrongdoing against Defendants Major Lukens, Colonel Leavings, or Warden Landrum, but to the extent he is suing them in their supervisory capacity, Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior. *See Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978) (finding no vicarious liability for a municipal "person" under 42 U.S.C. § 1983)

"Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). Under *Iqbal*, "each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Id.*, 556 U.S. at 677. "[S]upervisors are liable under [section] 1983 'either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between actions of the supervising official and the alleged constitutional violation.'" *Myers v. Bowman*, 713

F.3d 1319, 1328 (11th Cir. 2013) (quoting *Keating v. City of Miami*, 598 F.3d 753, 762

(11th Cir. 2010)). Facts sufficient to establish a causal connection include those "which

support an inference that the supervisor directed the subordinates to act unlawfully or

knew that the subordinates would act unlawfully and failed to stop them from doing so."

*Keating*, 598 F.3d at 762 (internal quotation omitted). Further, the factual allegations of

the complaint must plausibly show that the supervisory official acted with the same

mental state required to establish a constitutional violation against his subordinate. *See*

*Maxwell v. Cnty. of San Diego*, 708 F.3d 1075, 1097 (9th Cir. 2013).

Filing a grievance with a supervisory person does not, alone, make the

supervisor liable for the allegedly violative conduct brought to light by the grievance,

even if the grievance is denied. *See Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th

Cir. 2009); *Grinter v. Knight*, 532 F.3d 567, 576 (6th Cir. 2008); *Shehee v. Luttrell*, 199

F.3d 295, 300 (6th Cir. 1999); *see also Lomholt v. Holder*, 287 F.3d 683, 683 (8th Cir.

2002) (defendants' denial of plaintiff's grievances did not state a substantive

constitutional claim).

Plaintiff has failed to provide any factual allegations that Defendants Lukens,

Leavings, or Landrum personally participated in violating his constitutional rights.

Accordingly, they are due to be dismissed from the case.

## C. Defendants are immune from suit in their official capacities

Plaintiff has sued Defendants in their official and individual capacities. (Doc. 4,

Attachment 1, p. 4.) An official capacity claim is, in all respects other than name, to be

treated as a claim against the entity of which the defendant is an agent. *See Kentucky*

*v. Graham*, 473 U.S. 159, 166 (1985). To prevail under § 1983 against that entity, a

plaintiff must show that the entity itself was the "moving force" behind his constitutional deprivation; and the only way to do that is to identify a "policy or custom [of the entity that] played a part in the violation of federal law." *Id*. In the instant case, Plaintiff has not identified a policy or custom of the DOC that played a part in Defendants' alleged violations. Moreover, the Eleventh Amendment bars his claims for monetary damages against Defendants in their official capacities. Defendants are entitled to dismissal to the extent they are sued in their official capacities.

**D. Plaintiff's claim for injunctive relief is moot**

Plaintiff's unspecified request for injunctive relief arises out of his allegations of wrongdoing at Suwannee C.I. Annex. Plaintiff was released from prison in September 2012. (Doc. 9.) In a § 1983 action filed by a prisoner, requests for injunctive and declaratory relief become moot up on the transfer of that prisoner form the facility where his cause of action arose. *Spears v. Thigpen*, 846 F. 2d 1327, 1328 (11th Cir. 1988). "Absent class certification, an inmate's claim for injunctive and declaratory relief in a section 1983 action fails to present a case or controversy once the inmate has been transferred. Past exposure to illegal conduct does not constitute a present case or controversy involving injunctive relief if unaccompanied by any continuing, present adverse effects." *Wahl v. McIver,* 773 F. 2d 1169, 1173 (11th Cir. 1985). Plaintiff's request for injunctive relief is moot because he has been released from prison.

## IV. RECOMMENDATION

Accordingly, it is respectfully **RECOMMENDED** that the motion to dismiss (Doc. 9) should be **GRANTED IN PART AND DENIED IN PART**:

1. Plaintiff's claims that Defendants Merriman and Patten punched him several

times while Defendants Martain and Dickerson stood by; that he was issued a false

disciplinary report for destruction of a pillow; and that an unnamed person used mace

on Plaintiff when he declared a psychological emergency January 13, 2012 are due to

be dismissed for failure to exhaust administrative remedies.

 2.  Plaintiff's claims against Defendants Bates and Dickerson for the March 2012

disciplinary report are *Heck*-barred and due to be dismissed.

 3.  Plaintiff has failed to state a claim related to his alleged denial of sheets by

Defendant Merriman.  This claim is due to be dismissed.

 4.  Plaintiff has failed to state a claim against supervisory defendants Lukens,

Leavings, or Landrum, and these Defendants are due to be dismissed.

 5.  The only claim to survive the motion to dismiss is Plaintiff's claim that

Defendants Merriman and Dickerson, in their individual capacities, denied him food

from December 9-11, 2013.

 **IN CHAMBERS**  this 18th day of December 2013.

*s/Gary R. Jones*

GARY R. JONES
United States Magistrate Judge


**NOTICE TO THE PARTIES**
 A party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 14 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.