IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

TABARUS ANTHONY JOHNSON,

    Plaintiff,

v.                                          CASE NO. 1:13-cv-87-MP-GRJ

BRIAN BATES, et al,

    Defendants.

_____/

## REPORT AND RECOMMENDATION

This case is before the Court on Doc. 53, Defendants' Motion for Summary Judgment.  The Plaintiff has also filed a motion for summary judgment, which, upon review, the Court construes as a response in opposition to the Defendants' Motion for Summary Judgment, Doc. 57.   For the reasons discussed below, Defendants' Motion for Summary Judgment is due to be granted.

### I.  Summary Judgment Standard of Review

Pursuant to Federal Rule of Civil Procedure 56(c), the entry of summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  In applying this standard, the Court must examine the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits and other evidence in the record "in the light most favorable to the nonmoving party." *Samples on Behalf of Samples v. Atlanta,* 846 F. 2d 1328, 1330 (11th Cir. 1988). As the Supreme Court held in *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), the moving party bears the

initial burden of establishing the nonexistence of a triable issue of fact. If the movant is successful on this score, the burden of production shifts to the non-moving party who must then come forward with "sufficient evidence of every element that he or she must prove." *Rollins v. Techsouth*, 833 F.2d 1525, 1528 (11th Cir. 1987).  The non-moving party may not simply rest on the pleadings, but must use affidavits, depositions, answers to interrogatories, or other admissible evidence to demonstrate that a material fact issue remains to be tried.  *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986); *Castleberry v. Goldome Credit Corp.*, 408 F.3d 773, 785-86 (11th Cir. 2005).

## II.  Plaintiff's Allegations

On December 9, 2011, Plaintiff was taken to disciplinary confinement in P-Dormitory. (Doc. 4-1 at 5.)  He asked Correctional Officer Merriman if he would eat, to which Merriman replied "as long as [I'm] the dorm officer [you] will never eat." *Id.* Sergeant Dickerson also told Plaintiff later that day that as long as he was the dorm supervisor, Plaintiff would not eat. *Id.*  Plaintiff claims that he did not eat lunch or dinner that day, and his dinner tray was brought to him but thrown on the floor.  (Doc. 4-1 at 5, Doc. 55-1 at 8.)  Plaintiff states that the next day, December 10, 2011, he was denied "all two meals." (Doc. 4-1 at 5.)  Plaintiff avers that the day after, December 11, 2011, he was told by Correctional Officer "Grim"[1] [sic] that he was not to be fed per the Captain. *Id.*

In sum, Plaintiff alleges that he was not fed from dinner on December 9, 2011

---

[1] Presumably Plaintiff refers to Defendant Grand.

*Case No: 1:13-cv-87-MP-GRJ*

until after December 11, 2011.  Plaintiff claims that he lost 30 pounds due to this deprivation. (Doc. 55-1 at 17.)  He seeks damages in the form of declaratory, injunctive, and monetary relief. (Doc. 4-1 at 7.)

### III.  Defendants' Summary Judgment Evidence

In support of their motion for summary judgment, Defendants each present a sworn affidavit.  (Docs. 54-5, 54-6, 54-7.).  During the period of December 9-11, Defendants Merriman and Grand worked as Correctional Officers at Suwannee Correctional Institution, and Defendant Dickerson worked as a Correctional Sergeant at Suwannee Correctional Institution.  (Docs. 54-5, 54-6, 54-7.).  Defendant Merriman worked on December 11 from 8:00 a.m. to 4:00 p.m as a housing officer in P-Dormitory, which is confinement. (Doc. 54-5.)  Defendant Dickerson worked on December 9, 2011, from 8:00 a.m. to 4:00 p.m. as the housing sergeant in P-Dormitory but did not work on December 10 or 11. (Doc. 54-6.)  Defendant Michael Grand worked from 4:00 p.m. to 12:00 a.m. on December 9-11, 2011 as a housing officer in P-Dormitory. (Doc. 54-7.)

Defendants submitted a Housing Unit Log for P-Dormitory between December 9-11, 2011. (Doc. 54-9, 54-10, 54-11, 54-12.)  The log shows that Defendant Dickerson worked as the housing sergeant for the second shift on December 9, 2011 from 8:00 a.m. to 4:00 p.m. (Doc. 54-9 at 4, Doc. 54-10 at 1.)  The food cart for lunch arrived at 10:48 a.m. on December 9.  (Doc. 54-9 at 3.)  Plaintiff arrived at P-Dormitory at 12:48 p.m. (Doc. 54-10 at 1.)  Defendant Dickerson's shift was relieved at 4:00 p.m.  (Doc. 54-10 at 1.)  The food cart for the evening meal arrived at the P-Dormitory at 4:10 p.m. that day. (Doc. 54-10 at 2.)  Defendant Grand begun work during the third shift at 4:00 p.m.

on December 9 and conducted the secure housing evening meal with several other officers at 4:15 p.m. (Doc. 54-10 at 3.)  His shift ended at 12:00 a.m. on December 10. (Doc. 54-11 at 1.)

None of the Defendants worked the first or second shift on December 10, 2011. (Doc. 54-11 at 1-5.)  Defendant Grand worked the third shift that day, from 4:00 p.m to 12:00 a.m., and conducted the secure housing evening meal with several other officers. (Doc. 54-11 at 6-7.)

On December 11, 2011, Defendant Merriman worked the second shift from 8:00 a.m. to 4:00 p.m. (Doc. 54-12 at 4-5.)  He inspected the food cart at 10:55 a.m. (Doc. 54-12 at 4.)  Defendant Grand worked the third shift that day, from 4:00 p.m. to 12:00 a.m., and conducted the secure housing evening meal with other officers at 4:30 p.m. (Doc. 54-12 at 5-6.)

Finally, the Defendants submitted a record of Plaintiff's weight during confinement in P-Dormitory between August 10 and 20, 2011, and between December 9 and 31, 2011.  (Doc. 54-4 at 1-2, Doc. 63 at 3-6.)  Upon entering confinement on August 10, 2011, Plaintiff weighed 168 pounds. (Doc. 54-4 at 1.)  He weighed 168 pounds on August 17, 2011, three days before leaving confinement.  (Doc. 54-4 at 2.)  When entering confinement again on December 9, 2011, Plaintiff weighed 165 pounds. (Doc. 63 at 3.)  On December 13, 2011, Plaintiff's weight was recorded as 167 pounds. (Doc. 63 at 4.)  His weight was 167 pounds again on December 21, 2011. (Doc. 63 at 5.)

### IV.  Plaintiff's Summary Judgment Evidence

In opposition to Defendant's motion, Plaintiff has not filed any opposing evidence. Instead, Plaintiff contends (without any evidentiary support) that the prison cameras would show that Defendants were working on "those days and times," presumably the period between December 9 and 11, 2011. (Doc. 57 at 1.)  He asks the Court to safeguard tapes from an unspecified camera for review so that the recording will not be written over. (Doc. 57 at 1.)  He also requests that if the Court cannot procure the tapes, that the Court order the prison to produce the entire work time sheet for the years of 2011 and 2012. (Doc. 57 at 1.)

### V.  Discussion

It is well established that a civil suit under 42 U.S.C. § 1983 requires proof of a causal connection between the actions of the defendant and the constitutional deprivation.  *Zatler v. Wainwright*, 802 F.2d 397 (11th Cir. 1986.)  Here, Plaintiff alleges a constitutional violation in the form of food deprivation from noon of December 9, 2011 to the end of the day on December 11, 2011.[2]

As shown by the evidence provided in support of Defendants' motion for summary judgment, during Plaintiff's claim of alleged food deprivation, none of the three Defendants worked in the P-Dormitory during the service of more than one meal per day.

---

[2] In his deposition, Plaintiff states that he was given a food tray for dinner on December 9, 2011, although his tray was thrown on the floor and he did not eat it. (Doc. 55-1 at 7.)  However, in this situation, whether he actually ate the dinner or not is irrelevant to the conclusion reached on Defendants' motion for summary judgment.

*Case No: 1:13-cv-87-MP-GRJ*

On December 9, 2011, Plaintiff arrived in P-Dormitory at 12:48 p.m., before dinner was served but after lunch was served. (Doc. 54-10 at 1.) Defendant Dickerson was the housing sergeant when Plaintiff arrived at P-Dormitory, but was relieved before dinner was served. (Doc. 54-10 at 1., Doc. 54-6 at 1.) Thus, Defendant Dickerson was not personally involved in serving the dinner meal to Plaintiff on December 9, 2011.

Defendant Grand worked between 4:00 p.m. and 12:00 a.m. on December 9, 2011 during the third shift, including the service of dinner. (Doc. 54-10 at 2-4, Doc. 54-7 at 1.)

On December 10, 2011, however, the only Defendant working that day was Defendant Grand, who worked between 4:00 p.m. and 12:00 a.m., during the service of dinner. (Doc. 54-11 at 6, Doc. 54-7 at 1.)

On December 11, 2011, the last day of Plaintiff's confinement, Defendant Merriman worked during the second shift from 8:00 a.m. until 4:00 p.m. (Doc. 54-5 at 1, Doc. 54-12 at 3-5). Defendant Merriman inspected the food cart for lunch when it arrived that day at 10:55 a.m., and this was the only meal he was present for that day. (Doc. 54-12 at 4.) Defendant Grand worked the third shift on December 11 from 4:00 p.m. to 12:00 a.m. (Doc. 54-12 at 5; Doc. 54-7 at 1.) He conducted the secure housing evening meal at 4:30 p.m. with other officers. (Doc. 54-12 at 6.)

Based on the Defendants' summary judgment evidence, none of the Defendants, individually, could have deprived Plaintiff of meals to the extent that the deprivation would create a constitutional violation. Defendant Dickerson was only present for the lunch meal on December 9, but Plaintiff did not enter P-Dormitory until after the meal

was served.  Defendant Dickerson did not work at any other time between December 9 and December 11, and therefore could not have deprived Plaintiff of any meals during that period.  Defendant Merriman worked on December 11 between 8:00 a.m. and 4:00 p.m. and was present for the lunch meal that day.  He did not work at any other time between December 9 and December 11, and therefore, he could only be responsible for depriving Plaintiff of one meal.  Lastly, Defendant Grand worked on December 9, 10, and 11, between 4:00 p.m. and 12:00 a.m., and served dinner each day.  Therefore, the most he arguably could be responsible for would be depriving Plaintiff of one meal each day, or three meals in total. While the Court does not condone depriving an inmate of even one meal, the issue here is whether the alleged deprivation of several meals (at most), with absolutely no evidence of any health isues, rises to the level of a constitutional violation

     For a constitutional deprivation to occur, the inmate must experience a *substantial* deprivation of food that is sufficiently serious to state a violation of the Eighth Amendment.  *Berry v. Brady*, 192 F.3d 504, 507 (5th Cir. 1999)(emphasis added).  Sufficiently serious means that the inmate is deprived of the minimal measure of life's necessities, or denied some basic human need.  *Berry*, 192 F.3d at 507.  The severity of the deprivation is determined by assessing the amount of the deprivation and the duration together.  *Green v. Ferrell*, 801 F.2d 765, 770-71 (5th Cir. 1986).

     Even assuming, that Plaintiff had been deprived of food for two and a half days, each Defendant could not personally deprive Plaintiff of more than one meal per day for a period of three days.  The failure to serve few meals is not sufficiently severe to rise

to the level of a constitutional violation. *See Green*, 801 F.2d at 770 (holding that even on a regular, permanent basis, two meals a day may be adequate nutrition for a prisoner); *Darting v. Farwell*, 139 F. App'x 847 (9th Cir. 2005)(deprivation of one meal is not an injury serious enough to support an Eighth Amendment violation); *Talib v. Gilley*, 138 F.3d 211, 214 (5th Cir. 1998)(an inmate missing one out of nine meals was not a constitutional violation). Accordingly, none of the defendants, individually, could have deprived Plaintiff of a sufficient number of meals to raise a constitutional violation.

Moreover, Plaintiff has not demonstrated a constitutional violation because even assuming he did not receive the meals he alleges Plaintiff has not demonstrated any injury, let alone a physical injury. *See Lockamy v. Rodriguez*, 402 F. App'x 950 (5th Cir. 2010)(inmate was denied six meals over a 54 hour period but lacked any injury other than self-inflicted injury).

This conclusion is underscored by the fact that although Plaintiff claims that he lost thirty pounds over the three day period,[3] the undisputed evidence shows that Plaintiff did not lose any weight but actually gained two pounds during his time in confinement. (Doc. 63 at 3-6.)

Further, while Plaintiff claims injury to his back, shoulder, neck and arms in his response, Doc. 57, he has not provided any evidence supporting his claims of injury nor has he provided any explanation how deprivation of food could have injured his back, shoulder, neck or arms.

---

[3] Even without the Defendants' submission of Plaintiff's weight recorded during his time in confinement, the Court finds Plaintiff's assertion that he lost 30 pounds within a period of three days incredulous and outside the realm of possibility.

*Case No: 1:13-cv-87-MP-GRJ*

Accordingly, because Plaintiff has not submitted any evidence supporting any injury or health issue caused by the alleged deprivation of several meals between December 9-11, 2011, Plaintiff has failed to demonstrate that his Eighth Amendment rights were violated.

## VI. Recommendation

In light of the foregoing, it is respectfully **RECOMMENDED** that Defendants' Motion for Summary Judgment, Doc. 53, should be **GRANTED** and Plaintiff's Motion for Summary Judgment, Doc. 57, should be **DENIED**.

**IN CHAMBERS** at Gainesville, Florida this 18th day of November 2014.

*s/ Gary R. Jones*
GARY R. JONES
United States Magistrate Judge

## NOTICE TO THE PARTIES

**Pursuant to Fed. R. Civ. P. 72(b)(2), a party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 14 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations**

Accordingly, because Plaintiff has not submitted any evidence supporting any injury or health issue caused by the alleged deprivation of several meals between December 9-11, 2011, Plaintiff has failed to demonstrate that his Eighth Amendment rights were violated.

## VI. Recommendation

In light of the foregoing, it is respectfully **RECOMMENDED** that Defendants' Motion for Summary Judgment, Doc. 53, should be **GRANTED** and Plaintiff's Motion for Summary Judgment, Doc. 57, should be **DENIED**.

**IN CHAMBERS** at Gainesville, Florida this 18th day of November 2014.

*s/ Gary R. Jones*
GARY R. JONES
United States Magistrate Judge

## NOTICE TO THE PARTIES

**Pursuant to Fed. R. Civ. P. 72(b)(2), a party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 14 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations**